AO 241 (Rev. 09/17)

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

24 AUG 21 AM 10: 10

OFFICE OF THE CLERK

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: |
|---|---|

| Name (under which you were convicted): NICHOLAS AVERY | Docket or Case No.: 8:24CV327 |
|---|---|

| Place of Confinement : Tecumseh State Correctional Institute | Prisoner No.: 211347 |
|---|---|

| Petitioner (include the name under which you were convicted) NICHOLAS AVERY | v. | Respondent (authorized person having custody of petitioner) Warden - Tecumseh State CI |
|---|---|---|

| The Attorney General of the State of: Nebraska |
|---|

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   DISTRICT COURT OF SARPY COUNTY, NEBRASKA

   (b) Criminal docket or case number (if you know): CR19-529

2. (a) Date of the judgment of conviction (if you know):

   (b) Date of sentencing: March 30, 2020

3. Length of sentence: 40 - 60 years

4. In this case, were you convicted on more than one count or of more than one crime? ☒ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   SEXUAL ASSAULT OF CHILD 1ST DEG

   CHILD ENTICE BY ELEC COM DEV/VOP

6. (a) What was your plea? (Check one)

   ☐ (1) Not guilty       ☒ (3) Nolo contendere (no contest)

   ☐ (2) Guilty           ☐ (4) Insanity plea

Page 2 of 16

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?    N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

      ☐ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

      ☐ Yes   ☒ No

8.    Did you appeal from the judgment of conviction?

      ☒ Yes   ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:  Nebraska Court of Appeals

(b) Docket or case number (if you know):

(c) Result:  Affirmed

(d) Date of result (if you know):

(e) Citation to the case (if you know):

(f) Grounds raised:  Unknown, attorney filed on my behalf

**I told my attorney what I knew was wrong with my case and this is the response that I received: "I received your letter". I explained the issue with he Skype Chat Logs and the fact that the Prosecution did not turn them over. I received another letter stating "I received your letter." I then received a copy of the appeal Court decision. I then sent my attorney another letter and have not heard from him since.**

(g) Did you seek further review by a higher state court?  ☐ Yes  ☒ No

    If yes, answer the following:

    (1) Name of court:  N/A

    (2) Docket or case number (if you know):

    (3) Result:

AO 241 (Rev. 09/17)

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know):    N/A

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☒ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:    DISTRICT COURT OF SARPY COUNTY, NEBRASKA

(2) Docket or case number (if you know):    CR19-529

(3) Date of filing (if you know):    June 25, 2024

(4) Nature of the proceeding:    Modification of Sentence

(5) Grounds raised:

LEARNING DISABILITIES AND TRAUMATIC CHILDHOOD

MENTAL ILLNESS

DIMINISHED CAPACITY

INEFFECTIVE COUNSEL

DISPARITY IN SENTENCING

REHABILITATION

HOME PLAN

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result:    Denied

AO 241 (Rev. 09/17)

(8) Date of result (if you know):    July 2024

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:    N/A

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes        ☐  No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:    N/A

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

**GROUND 2 : INCONSISTENCIES IN THE CASE THE SHOULD CAUSE ALARM TO THE COURT:**

1. Mr. Avery's personal statement from the presentence report went missing. His first lawyer (Nathan Lab) told him to send the packet to him so he could review it before forwarding it on. He told Mr. Avery to write that portion on a separate sheet of paper. The parole\probation officer claimed to have never received that extra paper. Mr. Avery knows that Mr. Lab's office received it, but he never found out what happened after that.

2. Mr. Averys's conviction from 2017 has been repeatedly mischaracterized. The prosecution said he was "offering sex to a minor". That is wrong. The law says "Lewd and crude" language and this is the only reason Mr. Avery took the plea back then. It was never revealed how many times the police messaged him pretending to be somebody else (adults and minors). Mr. Avery later was able to count 7. It took all of this effort before he finally said something they could prosecute. Mr. Avery never said that he wanted to meet with any of the minors (or the pretend minors), but he did say yes to adults. When he said "We can meet when you are older", this was like saying "We'll see" as in "stop asking already, the answer is no!".

3. S.W. lied about telling Mr. Avery her true age. She said she eventually told him her true age, that is not true. In the Deposition S.W. says she told Mr. Avery her true age in a text message. All of the text messages were collected. Her age is not in any of the text messages. Mr. Avery never heard her true age until he was locked up and saw it on the news. S.W. lied about asking to go back home. In her deposition she says she asked to go back home right after arriving at his house. That is a lie. She never did. Mr. Avery would have paid for a trip for her to go back home or any place else within reason. She wanted to pay for the Lyft she took, but Mr. Avery insisted on paying. She could have paid for one back home if she really wanted to. She ordered the Lyft even though he paid for it, so she knows how to do it. If Mr. Avery was holding her, she could have called a Lyft while he was working or asleep. Her reason was "That's when I slept". She was using her phone on his WiFi network. If what she says is true, then why didn't Mr. Avery take her phone away? And why would he give her his Wifi password?

4. S.W. lied about Mr. Avery forcing himself on her. She says he hit and slapped her and dragged her up a flight of stairs. This is not true. He is not strong enough to pull her up stairs even if she were

not fighting. Mr. Avery is very thin and rather weak. And she is not a light person, she weighs more than Mr. Avery does. It doesn't seem like the prosecution believed her here but they presented it anyway.

5.  Mr. Avery was accused of violating probation conditions that did not exist. The Judge and lawyers thought he was required to use computer monitoring software and that he was violating probation just talking to a person online. That is not true. He was required to use and did use internet filtering software. Mr. Avery attempted to tell Nathan Lab this, but he didn't understand. Mr. Avery brought this up during the presentence interview along with the fact that Mr. Avery only started talking to people online after his parole officer encouraged him as a way to socialize. Mr. Avery's clarification was described as "blaming other people" in the presentence report and the Judge cited this in his decision. The Judge and both lawyers continued to describe the fact that Mr. Avery was talking to a person online as "concerning". Besides her age, nothing was breaking the rules.

6.  The Judge thought Mr. Avery should have known S.W's true age because she had a stuffed animal. This is unreasonable, his sister and his mother, both over 30 yrs old, have stuffed animals. In 2018 he helped his friend, Jill, move. She is also over 30 and they filled up 2 tall kitchen trash bags with her stuffed animals. Mr. Avery once gave his dad a stuffed animal. There are people in Mr. Avery's unit, in prison, that have a stuffed animal.

7.  The Judge thought Mr. Avery should have known S.W.'s true age because she had a pacifier in her belongings. Mr. Avery does not search people when he welcomes them into his house. S.W. identifies herself as a "little", somebody that likes to pretend to be much younger than they are. For example, they might use a pacifier. Internet profiles were found stating this on her profiles.

8.  The Judge thought Mr. Avery should have known her true age, this is the same report that used the words Abnormal Cognitive Profile, because he has a higher than average I.Q. There is no part of an IQ test that deals with guessing people's ages. He is not aware of any study that shows a correlation between IQ and guessing ages. Nathan Lab even said she looks older than 13. The Judge and prosecutor repeatedly stated her age wrong.

9.  Mr. Avery was accused of minimizing it because he used colloquial definitions instead of legal ones. He originally had 3 counts because they found 3 condoms at his house. Ted Delaet believed Mr. Avery was minimizing when he described having sex once. But

Mr. Avery believes most people would call that one encounter regardless of the number of condoms used. Any sex education class will tell you it is appropriate to use more than one condom in one encounter. For what it is worth, S.W. did not want to use a condom.

10. Mr. Avery attempted to confirm S.W.'s age using the background check service provided at landlordtools.com. This is a service he had used before when he rented out one of the extra bedrooms in his house. Doctor Ted Delaet did not seem to believe him when he told him about this. The Skype chat logs would confirm Mr. Avery was telling the truth. Landlordtools.com was unable to find information about whatever she entered. Mr. Avery decided that because she at least tried, she must be telling the truth. She told him she was being abused at home and he did not want to leave her there. Mr. Avery believes the report by Dr Delaet included his belief that Mr. Avery made all of this up. It was later found that she had been searching for a way to make a false ID and had one or more men mailing sex toys to her house.

11. Mr. Avery believes the prosecution never turned over the Skype chat logs. The Motion for Discovery listed "Skype chat logs." The prosecutor objected to this and the Judge affirmed it, ordering them to turn it over. The prosecutor also claimed to not know what "Skype chat logs" were. It would have been stored on Mr. Avery's computer that was in police custody. These logs would have helped confirm things Mr. Avery has been saying.

12. Nobody cared to ask about the extreme mental anguish Mr. Avery experienced learning he had sexual contact with a 13 year old! Mr. Avery would have rather killed himself. He has never wanted to meet somebody so young, much less have any sort of sexual encounter with them. He has always been clear about this in every gathered communication.

13. Not all of the character letters were forwarded to the Court, instead Nathan Lab decided not to send all of his character letters to the Judge.

14. The Prosecution continuously described his behavior as "luring a child" even after discovering that he answered an ad from a person claiming to be 19 years old and in an abusive home.

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☐ Yes    ☒ No

(2) Second petition:    ☐ Yes    ☐ No

(3) Third petition:    ☐ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

## My attorney filed direct appeal, I have no knowledge of what was in it

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**    **INEFFECTIVE COUNSEL**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

**Mr. Avery received Ineffective Counsel because counsel did not argue the case for him. He was uneducated in the law and did not understand the court process and his rights. Counsel deprived him of establishing important mitigating circumstances when he was not afforded the opportunity to present testimony to the court during portions of the proceedings. Counsel just went through the motions, nor did he try to discredit anything that the state brought before the court. Counsel did not object to anything. Counsel has, to this date, still not provided Mr. Avery with all of the discovery in his case. Counsel did not argue that Mr. Avery was sentenced outside his guidelines. Counsel did not bring to the court's attention that Mr. Avery has learning disabilities and therefore did not understand the court proceedings. Counsel did not order a mental health evaluation of Mr. Avery, even though it was clearly warranted. Counsel did not argue with the court that this was a consensual relationship. Mr. Avery admits having a consensual relationship with the victim and knows that it was wrong, but again this was a consensual relationship, she voluntary came to his house. The victim willingly got into the Lyft vehicle and came to his house. Yes, he is guilty of having a relationship with a minor but nothing more.**

(b) If you did not exhaust your state remedies on Ground One, explain why:

**N/A**

AO 241 (Rev. 09/17)

(c)  **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    **MODIFICATION OF SENTENCE**

Name and location of the court where the motion or petition was filed:

**DISTRICT COURT OF SARPY COUNTY, NEBRASKA**

Docket or case number (if you know):    **CR19-529**

Date of the court's decision:    **July 2024**

Result (attach a copy of the court's opinion or order, if available):    **Denied**

_____

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    **N/A**

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

**N/A**

_____

_____

_____

_____

AO 241 (Rev. 09/17)

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:    **None**

---

**GROUND TWO:**    INCONSISTENCIES IN THE COURT CASE THAT SHOULD BE CAUSE FOR ALARM

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

**Mr. Avery's personal statement from the presentence report went missing. His first lawyer (Nathan Lab) told him to send the packet to him so he could review it before forwarding it on. He told Mr. Avery to write that portion on a separate sheet of paper. The parole\probation officer claimed to have never received that extra paper. Mr. Avery knows that Mr. Lab's office received it, but he never found out what happened after that. Mr. Avery's conviction from 2017 has been repeatedly mischaracterized. The prosecution said he was "offering sex to a minor". That is wrong. The law says "Lewd and crude" language and this is the only reason Mr. Avery took the plea back then. It was never revealed how many times the police messaged him pretending to be somebody else (adults and minors). Mr. Avery later was able to count 7. It took all of this effort before he finally said something they could prosecute. Mr. Avery never said that he wanted to meet with any of the minors (or the pretend minors), but he did say yes to adults. When he said "We can meet when you are older", this was like saying "We'll see" as in "stop asking already, the answer is no!".    CONTINUED....**

(b) If you did not exhaust your state remedies on Ground Two, explain why:    **N/A**

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:    **My attorney filed direct appeal, I have no knowledge of what was in it**

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    **MODIFICATION OF SENTENCE**

Name and location of the court where the motion or petition was filed:

**DISTRICT COURT OF SARPY COUNTY, NEBRASKA**

Docket or case number (if you know):    **CR19-529**

AO 241 (Rev. 09/17)

Date of the court's decision:    **July 2024**

Result (attach a copy of the court's opinion or order, if available):    **Denied**

(3) Did you receive a hearing on your motion or petition?              ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
**N/A**

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Two :    **None**

**GROUND THREE:**    **MR. AVERY'S MENTAL ILLNESS**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

**Mr. Avery has Severe Depression, Anti-Social Disorder and PTSD which is known to be linked to
criminal activity. The psychiatrist at his prison said Mr. Avery has Borderline Personality and
probably mild Autism. Also mentioned were Extreme Social Isolation and Abnormal Cognitive
Profile. Certain psychiatric conditions do increase a person's risk of committing a crime. Research
suggests that patients with mental illness may be more prone to violence if they do not receive
adequate treatment, are actively experiencing delusions, or have long-standing paranoia. Such
patients are often under the influence of their psychiatric illness such as command hallucinations.
Other comorbidities include conditions such as substance use disorder, unemployment,
homelessness, and secondary effects of mental illness such as cognitive impairment, compound
the risk of committing a crime.**

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:   **N/A**

(c)    **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

    (2) If you did not raise this issue in your direct appeal, explain why:

    **My attorney filed direct appeal, I have no knowledge of what was in it**

(d)    **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes    ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:    **MODIFICATION OF SENTENCE**

    Name and location of the court where the motion or petition was filed:

    **DISTRICT COURT OF SARPY COUNTY, NEBRASKA**

    Docket or case number (if you know):    **CR19-529**

    Date of the court's decision:    **July 2024**

    Result (attach a copy of the court's opinion or order, if available):    **Denied**

    (3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☒ No

    (4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☒ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:    **N/A**

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:    None

**GROUND FOUR:**    MR. AVERY S'LEARNING DISABILITIES AND TRAUMATIC CHILDHOOD

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

**Mr. Avery has been diagnosed with ADHD and was prescribed Ritalin. He was in Special Education throughout school and needed extra help with speech and reading.  Mr. Avery has suffered a traumatic childhood that had a terrible effect on him at such a young age.**
**He was bullied at school and teased and bullied by his older brother at home. His parents divorced when he was 16 years old and he took it hard. He was bullied just about everyday in middle and high school and even spit on.**

(b) If you did not exhaust your state remedies on Ground Four, explain why:    N/A

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐   Yes    ☒   No

(2) If you did not raise this issue in your direct appeal, explain why:

My attorney filed direct appeal, I have no knowledge of what was in it

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

     ☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    MODIFICATION OF SENTENCE

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed:

DISTRICT COURT OF SARPY COUNTY, NEBRASKA

Docket or case number (if you know):   CR19-529

Date of the court's decision:   July 2024

Result (attach a copy of the court's opinion or order, if available):   Denied

| | | | |
|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☐ Yes | ☒ No |
| (4) Did you appeal from the denial of your motion or petition? | ☐ Yes | ☒ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ Yes | ☐ No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:   None

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☒ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:    N/A

_____

_____

_____

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

No

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☐ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.    N/A

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☐ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    N/A

_____

_____

_____

_____

AO 241 (Rev. 09/17)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    **Nathan Lab**

(b) At arraignment and plea:    **Nathan Lab**

(c) At trial:    **N/A**

(d) At sentencing:    **Nathan Lab**

(e) On appeal:    **Gregory Pivovar**

(f) In any post-conviction proceeding:    **ProSe**

(g) On appeal from any ruling against you in a post-conviction proceeding:

**N/A**

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    ☐ Yes    ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

**N/A**

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

**My Post Conviction Relief was denied in July 2024, making my motion ripe for review.**

AO 241 (Rev. 09/17)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:    **Reduction in Sentence, Vacate**

**Sentence, Time Served**

_____

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on    **8/19/2024**    (month, date, year).

Executed (signed) on    **8/19/24**    (date).

**/s/Nicholas Avery**    *Nicholas Avery*

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

Page 16 of  16

# IN THE DISTRICT COURT OF SARPY COUNTY, NEBRASKA

| | | |
|---|---|---|
| STATE OF NEBRASKA | § § | |
| Plaintiff, | § § | CASE NO. CR19–529 |
| vs. | § § | |
| NICHOLAS AVERY | § § | |
| Defendant. | § § | |

## MOTION FOR MODIFICATION OF SENTENCE

Comes now, Nicholas Avery, pro se litigant, would like to ask this Honorable Court to consider this pro se motion for a reduction in his sentence.

Mr. Avery has been incarcerated for over 5 years, he was arrested on June 6, 2019 and has been incarcerated since then. He was sentenced on March 30, 2020 and pleads with this Honorable Court for a reduction in his sentence and brings the following points to the court's attention.

### ARGUMENT

Your Honor, reducing his sentence would not diminish the seriousness of the offense or undermine his original sentence.

- Mr. Avery has already paid a substantial price for his malfeasance and no further justice would be served in keeping him imprisoned at this stage.

- Mr. Avery has more than paid his dues, not only by his long enough incarceration, but prison is a sufficient penalty for himself and a sufficient deterrent for other people who would plan such a crime.

The State would argue that reducing Mr. Avery's sentence would diminish deterrence but granting his release would not result in unwarranted

1

sentencing disparities because his original sentence would only be modified because of unforeseen, changed circumstances.

## ARGUMENT 1: MR. AVERY'S LEARNING DISABILITIES AND TRAUMATIC CHILDHOOD

Mr. Avery has been diagnosed with ADHD and was prescribed Ritalin. He was in Special Education throughout school and needed extra help with speech and reading. Mr. Avery has suffered a traumatic childhood that had a terrible effect on him at such a young age.

He was bullied at school and teased and bullied by his older brother at home. His parents divorced when he was 16 years old and he took it hard. He was bullied just about everyday in middle and high school and even spit on.

See...https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9590671/ **The Relationship between Childhood Traumas and Crime in Male Prisoners** : It was observed that there is a relationship between childhood traumas and criminal behavior in prisoners and detainees and that criminal behavior is affected by sociodemographic variables. In addition, there is a relationship between childhood traumas and violent tendencies. As the scores of individuals on emotional abuse, physical abuse, physical neglect, sexual abuse, and childhood trauma scales increased, the scores of individuals on VTS increased as well. CTQ predicts 11% of the variance of violence tendency.

If psychiatric conditions and violence tendencies of individuals with childhood trauma are detected, it will be possible for preventive actions to be taken before these people become prisoners or detainees.

See...https://www.urban.org/urban-wire/improve-safety-understanding-and-addressing-link-between-childhood-trauma-and-crime-key#:~:text=Peopl e%20who%20repeatedly%20experience%20trauma,or%20engage%20in%20 delinquent%20activity. People who repeatedly experience trauma also have an increased likelihood for developing mental illness. Difficulties in neural and cognitive functions, such as those associated with ACEs, have often been found in young people who commit crimes or engage in delinquent activity.

It can be difficult for people who've experienced trauma to distinguish between safe and dangerous situations, which increases their likelihood of poor decision making and antisocial behaviors, which can be linked to criminality. In one study, people who had committed criminal offenses reported nearly four times as many adverse events in childhood than an average adult male.

2

Moreover, with each additional ACE youth report, the risk of violence perpetration increases by 35 to 144 percent.

Without intervention, many young people who've experienced ACEs enter the criminal legal system and eventually, jail or prison. Their trauma is often ignored, leading to insufficient mental health support and education on trauma's effects. The prison environment itself can be traumatizing, further damaging the psyche, potentially leading to increased chances of recidivism.

ACEs victimize young people, leaving them in need of trauma intervention and support—not criminal legal system involvement.

See...https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3398051/ The question of whether childhood mental illness has long term consequences in terms of criminal behavior has been little studied, yet it could have major consequences for both the individual and society more generally. In this paper, we focus on Attention-Deficit/Hyperactivity Disorder (ADHD), one of the most prevalent mental conditions in school-age children, to examine the long-term effects of childhood mental illness on criminal activities, controlling for a rich set of individual, family, and community level variables. The empirical estimates show that children who experience ADHD symptoms face a substantially increased likelihood of engaging in many types of criminal activities.

See...https://portal.cops.usdoj.gov/resourcecenter/ric/Publications/cops-w0869-pub.pdf When a person is experiencing intensified anger or anxiety as the result of a mental illness, their behavior becomes less controllable and predictable. The anger, anxiety, depression, or panic experienced by people in the midst of an episode of mental illness can contribute to impulsive behavior, which often exacerbates the circumstances and severity of a criminal act. In addition, the mental illness can lead them to experience higher levels of guilt and hopelessness that can become overwhelming following the commission of a crime and subsequent incarceration, leaving them at greater risk of attempting and committing suicide while incarcerated. Finally, the mental illness and accompanying mental confusion can make it more difficult for a person to determine the appropriateness of their behavior or to choose not to commit a crime because their thought processes and judgment are impaired.

See...https://www.livescience.com/38612-childhood-bullying-criminal-delinquency.html People who were bullied throughout childhood and adolescence

3

are more likely than others to engage in delinquent or criminal behavior later in life, a new study finds. In the new research, scientists found that about 14 percent of those who reported suffering repeated bullying through their childhood and teenage years — up to 18 years of age — wound up serving time in prison as adults. In comparison, 6 percent of people who did not experience bullying ended up in prison. "Being victimized at any point in time was associated with higher odds of delinquency, substance abuse, arrests and convictions in late adolescence and adulthood," Turner told LiveScience. "But chronic victims — those who were bullied in childhood and adolescence — had the highest odds of adverse legal outcomes."

"Most studies found bullying and offenders are associated with higher crime," Turner said. "I found support that being a victim is also associated with adverse legal outcomes."

## ARGUMENT 2: MR. AVERY'S MENTAL ILLNESS

Mr. Avery has Severe Depression, Anti-Social Disorder and PTSD which is known to be linked to criminal activity. The psychiatrist at his prison said Mr. Avery has Borderline Personality and probably mild Autism. Also mentioned were Extreme Social Isolation and Abnormal Cognitive Profile. Certain psychiatric conditions do increase a person's risk of committing a crime. Research suggests that patients with mental illness may be more prone to violence if they do not receive adequate treatment, are actively experiencing delusions, or have long-standing paranoia. Such patients are often under the influence of their psychiatric illness such as command hallucinations. Other comorbidities include conditions such as substance use disorder, unemployment, homelessness, and secondary effects of mental illness such as cognitive impairment, compound the risk of committing a crime.

See...https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3402156/ **Offending behavior: the role of trauma and PTSD**

Research indicates an interlink between traumatic experiences and criminal behavior revealing that offenders present a higher prevalence of Post-traumatic Stress Disorder and associated symptoms when compared with the general population.

See...https://www.thelancet.com/journals/lanpub/article/PIIS2468-2667(23)00075-0/fulltext **Post-traumatic stress disorder and the risk of crime**

4

Post-traumatic stress disorder (PTSD) has been linked to crime in general populations. Post-traumatic stress disorder (PTSD) is reported to be prevalent in 3·9% of the global population and is characterized by exposure to a stressful event or situation, followed by persistent, intrusive recall of the stressor and avoidance of stressor-related circumstances. One of the criteria for PTSD diagnosis is "marked alterations in arousal and reactivity associated with the traumatic event(s)", which can be indicated, in part, through "irritable behavior ... typically expressed as verbal or physical aggression towards people or objects." Because of these diagnostic criteria, previous research has hypothesized and shown that PTSD is linked to aggression and increased risk of behavior. One hypothesis for this link is that PTSD leads to dysregulation in stress-mediating biological systems in response to trauma, which leads to a fight-or-flight reaction to stress. Therefore, individuals with PTSD might have increased liability for aggression.

Familial risk factors, including genetic and environmental influences, might also confound the association between PTSD and crime. These familial factors are important to consider as previous studies have reported that PTSD and crime tend to aggregate in families and are heritable.

We showed a significantly higher risk of crime conviction in individuals with PTSD than in individuals without PTSD. The risk was attenuated but remained increased after controlling for measured factors linked to both PTSD and increased risk of crime and unmeasured genetic and environmental familial factors. Therefore, the hypothesis that PTSD might increase the risk of crime is strengthened by our results.

See...https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4520382/ Depression increases the risk of a range of adverse outcomes including suicide, premature mortality, and self-harm. Depression is associated with increased risk of a wide range of adverse outcomes, including reduced life expectancy, suicide, self-harm, acute myocardial infarction, and a worse prognosis for comorbidities, such as heart disease and diabetes. Clinical experience and expert opinion also suggest an association with the risk of perpetrating violence, including homicide in male perpetrators.

## ARGUMENT 3: DIMINISHED CAPACITY

Diminished capacity was a mitigating factor because Mr. Avery acted under seriously reduced mental capacity, also known as diminished capacity. The diminished capacity was a core component of the crime, which rendered him unable to achieve the mental state required to commit the crime in question, for example, due to mental health issues and trauma.

See...https://alanellis.com/answering-the-why-question-the-powerful-depa
rture-grounds-of-diminished-capacity-aberrant-behavior-and-post-offens
e-rehabilitation/#:~:text=2255%20Habeas%20Corpus-,Answering%20the%2
0'Why'%20Question%3A%20The%20Powerful%20Departure%20Grounds%2
0of,Behavior%2C%20and%20Post%2DOffense%20Rehabilitation&text=At%2
0sentencing%2C%20most%20judges%20want,unlikely%20to%20do%20it%
20again%3 For a substantial number of offenders, however, a mental disorder
may have contributed to the commission of the offense. In those cases, the
sentencing guidelines may provide a vehicle for a mitigated sentence. Section
5K2.13 (p.s.) has long provided for a "diminished capacity" departure when a
defendant's "significantly reduced mental capacity ... contributed to the
commission of the offense." A sentence below the applicable guideline range
may be warranted if the defendant committed the offense while suffering from
a significantly reduced mental capacity. However, the court may not depart
below the applicable guideline range if:

- (1) the significantly reduced mental capacity was caused by the voluntary
  use of drugs or other intoxicants

- (2) the facts and circumstances of the defendant's offense indicate a
  need to protect the public because the offense involved actual violence or
  a serious threat of violence; or

- (3) the defendant's criminal history indicates a need to incarcerate the
  defendant to protect the public.

If a departure is warranted, the extent of the departure should reflect the
extent to which the reduced mental capacity contributed to the commission of
the offense. The amendment represents a compromise approach to the circuit
conflict. The new policy statement allows a diminished capacity departure in
any case if there is sufficient evidence that the defendant committed the
offense while suffering from a significantly reduced mental capacity except
under the three specified circumstances.

## ARGUMENT 4: INEFFECTIVE COUNSEL

Mr. Avery received Ineffective Counsel because counsel did not argue the
case for him. Mr. Avery was uneducated in the law and did not understand the
court process and his rights. Counsel deprived Mr. Avery of establishing
important mitigating circumstances when he was not afforded the opportunity
to present testimony to the court during portions of the proceedings. Counsel

6

just went through the motions, nor did he try to discredit anything that the state brought before the court.

- Counsel did not object to anything.
- Counsel has, to this date, still not provided Mr. Avery with all of the discovery in his case.
- Counsel did not argue that Mr. Avery was sentenced outside his guidelines.
- Counsel did not bring to the court's attention that Mr. Avery has learning disabilities and therefore did not understand the court proceedings.
- Counsel did not order a mental health evaluation of Mr. Avery, even though it was clearly warranted.
- Counsel failed to fully investigate the case.
- Counsel did not argue with the court that this was a consensual relationship. Mr. Avery admits having a consensual relationship with the victim and knows that it was wrong, but again this was a consensual relationship.
- The victim willingly got into the Lyft vehicle and came to Mr. Avery's house. Yes, he is guilty of having a relationship with a minor but nothing else.

Other inconsistencies that were in the court case that should be cause of alarm:

1. Mr. Avery's personal statement from the presentence report went missing. His first lawyer (Nathan Lab) told him to send the packet to him so he could review it before forwarding it on. He told Mr. Avery to write that portion on a separate sheet of paper. The parole\probation officer claimed to have never received that extra paper. Mr. Avery knows that Mr. Lab's office received it, but he never found out what happened after that.
2. Mr. Averys's conviction from 2017 has been repeatedly mischaracterized. The prosecution said he was "offering sex to a minor". That is wrong. The law says "Lewd and crude" language and this is the only reason Mr. Avery took the plea back then. It was never revealed how many times the police messaged him pretending to be somebody else (adults and minors). Mr. Avery later was able to count 7. It took all of this effort before he finally said something they could prosecute. Mr. Avery never said that he wanted to meet with any of the minors (or the pretend minors), but he did say yes to adults. When he said "We can meet when you

7

are older", this was like saying "We'll see" as in "stop asking already, the answer is no!".

3. S.W. lied about telling Mr. Avery her true age. She said she eventually told him her true age, that is not true. In the Deposition S.W. says she told Mr. Avery her true age in a text message. All of the text messages were collected. Her age is not in any of the text messages. Mr. Avery never heard her true age until he was locked up and saw it on the news. S.W. lied about asking to go back home. In her deposition she says she asked to go back home right after arriving at his house. That is a lie. She never did. Mr. Avery would have paid for a trip for her to go back home or any place else within reason. She wanted to pay for the Lyft she took, but Mr. Avery insisted on paying. She could have paid for one back home if she really wanted to. She ordered the Lyft even though he paid for it, so she knows how to do it. If Mr. Avery was holding her, she could have called a Lyft while he was working or asleep. Her reason was "That's when I slept". She was using her phone on his WiFi network. If what she says is true, then why didn't Mr. Avery take her phone away? And why would he give her his Wifi password?

4. S.W. lied about Mr. Avery forcing himself on her. She says he hit and slapped her and dragged her up a flight of stairs. This is not true. He is not strong enough to pull her up stairs even if she were not fighting. Mr. Avery is very thin and rather weak. And she is not a light person, she weighs more than Mr. Avery does. It doesn't seem like the prosecution believed her here but they presented it anyway.

5. Mr. Avery was accused of violating probation conditions that did not exist. The Judge and lawyers thought he was required to use computer monitoring software and that he was violating probation just talking to a person online. That is not true. He was required to use and did use internet filtering software. Mr. Avery attempted to tell Nathan Lab this, but he didn't understand. Mr. Avery brought this up during the presentence interview along with the fact that Mr. Avery only started talking to people online after his parole officer encouraged him as a way to socialize. Mr. Avery's clarification was described as "blaming other people" in the presentence report and the Judge cited this in his decision. The Judge and both lawyers continued to describe the fact that Mr. Avery was talking to a person online as "concerning". Besides her age, nothing was breaking the rules.

6. The Judge thought Mr. Avery should have known S.W's true age because she had a stuffed animal. This is unreasonable, his sister

8

and his mother, both over 30 yrs old, have stuffed animals. In 2018 he helped his friend, Jill, move. She is also over 30 and they filled up 2 tall kitchen trash bags with her stuffed animals. Mr. Avery once gave his dad a stuffed animal. There are people in Mr. Avery's unit, in prison, that have a stuffed animal.

7.  The Judge thought Mr. Avery should have known S.W.'s true age because she had a pacifier in her belongings. Mr. Avery does not search people when he welcomes them into his house. S.W. identifies herself as a "little", somebody that likes to pretend to be much younger than they are. For example, they might use a pacifier. Internet profiles were found stating this on her profiles.

8.  The Judge thought Mr. Avery should have known her true age, this is the same report that used the words Abnormal Cognitive Profile, because he has a higher than average I.Q. There is no part of an IQ test that deals with guessing people's ages. He is not aware of any study that shows a correlation between IQ and guessing ages. Nathan Lab even said she looks older than 13. The Judge and prosecutor repeatedly stated her age wrong.

9.  Mr. Avery was accused of minimizing it because he used colloquial definitions instead of legal ones. He originally had 3 counts because they found 3 condoms at his house. Ted Delaet believed Mr. Avery was minimizing when he described having sex once. But Mr. Avery believes most people would call that one encounter regardless of the number of condoms used. Any sex education class will tell you it is appropriate to use more than one condom in one encounter. For what it is worth, S.W. did not want to use a condom.

10. Mr. Avery attempted to confirm S.W.'s age using the background check service provided at landlordtools.com. This is a service he had used before when he rented out one of the extra bedrooms in his house. Doctor Ted Delaet did not seem to believe him when he told him about this. The Skype chat logs would confirm Mr. Avery was telling the truth. Landlordtools.com was unable to find information about whatever she entered. Mr. Avery decided that because she at least tried, she must be telling the truth. She told him she was being abused at home and he did not want to leave her there. Mr. Avery believes the report by Dr Delaet included his belief that Mr. Avery made all of this up. It was later found that she had been searching for a way to make a false ID and had one or more men mailing sex toys to her house.

11. Mr. Avery believes the prosecution never turned over the Skype chat logs. The Motion for Discovery listed "Skype chat logs." The

9

prosecutor objected to this and the Judge affirmed it, ordering them to turn it over. The Prosecutor also claimed to not know what "Skype chat logs" were. It would have been stored on Mr. Avery's computer that was in police custody. These logs would have helped confirm things Mr. Avery has been saying.

12. Nobody cared to ask about the extreme mental anguish Mr. Avery experienced learning he had sexual contact with a 13 year old! Mr. Avery would have rather killed himself. He has never wanted to meet somebody so young, much less have any sort of sexual encounter with them. He has always been clear about this in every gathered communication.

13. Not all of the character letters were forwarded to the Court, instead Nathan Lab decided not to send all of his character letters to the Judge.

14. The Prosecution continuously described his behavior as "luring a child" even after discovering that he answered an ad from a person claiming to be 19 years old and in an abusive home.

See...https://www.law.cornell.edu/wex/ineffective_assistance_of_counsel#:~:text=To%20prove%20ineffective%20assistance%20of,proceeding%20would%20have%20been%20 Under the Sixth Amendment of the United States Constitution, it guarantees the right to effective assistance of counsel to defendants in criminal proceedings.

To prove ineffective assistance of counsel, a defendant must show:

- That their trial lawyer's conduct fell below an "objective standard of reasonableness" and,
- "a reasonable probability that, but for counsel's unprofessional errors," the outcome of the criminal proceeding would have been different.

See...https://www.tdcaa.com/journal/preventing-claims-of-ineffective-assistance-of-counsel/ The assistance of counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. ... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" A frequent ineffective assistance complaint is that the defense attorney did not obtain pretrial discovery. This is an easy issue for the prosecutor to help avoid simply by providing discovery as part of the case's preparation, regardless of whether a motion has been filed.

See...https://www.gordondefense.com/legal-process/post-conviction/2255-m otions-to-vacate/ineffective-assistance-of-counsel/ The Supreme Court has held that a citizen's constitutional right to counsel includes a right to effective assistance of counsel. Proving that your lawyer was ineffective at trial is one way to get his or her conviction overturned. To prove ineffective assistance, a defendant must show (1) that their lawyer's performance fell below an objective standard of reasonableness and (2) that the result of the proceeding would have been different if the attorney had not made unprofessional errors. See Strickland v. Washington, 466 US 668 (1984).

### ARGUMENT 5: DISPARITY IN SENTENCING

Sentencing disparity occurs when similar cases are not disposed similarly or when dissimilar cases are not disposed differently. Disparity implies that many offenders are not being sentenced in accordance with legally relevant factors.

See...https://www.sagepub.com/sites/default/files/upm-binaries/27008_4.pd f Allegations of lawlessness in sentencing reflect concerns about both disparity and discrimination. Although these terms are sometimes used interchangeably, they do not mean the same thing. Disparity is a difference in treatment or outcome that does not necessarily result from intentional bias or prejudice. Applied to the sentencing process, disparity exists when similar offenders are sentenced differently or when different offenders receive the same sentence. It exists when judges impose different sentences on two offenders with identical criminal histories who are convicted of the same crime, when judges impose identical sentences on two offenders whose prior records and crimes are very different, or when the sentence depends on the judge who imposes it or the jurisdiction in which it is imposed.

See...https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?ref erer=&httpsredir=1&article=5585&context=jclc Disparity, however, is unjustified if the rationale for these differences cannot be traced to relevant distinctions of character or behavior which bear a certain known relationship to the aims of punishment. Individualized sentencing is abused when the type and length of sentence depends on the identity of the particular trial judge exercising unchecked judicial discretion within a wide range of statutory sentencing alternatives.

The imposition of disparate sentences upon offenders with similar characteristics convicted of similar crimes hinders correctional methods. When an offender receives an unjustified sentence, his antagonism toward society is increased. He becomes a discipline problem, and a barrier to

11

rehabilitation is erected. His family lives in an aura of injustice. Confidence in the administration of the legal system is shaken. Not only does disparity harm the prisoner and the prison system, but it is contrary to the basic concept of equal treatment under the law embodied in the Fifth and Fourteenth Amendments to the Constitution." Distinctions in treatment should be neither arbitrary nor unreasonable; they should be based on rational distinctions rooted in significant factual differences which have a substantial relation to a legitimate governmental purpose.

The following defendants were sentenced for similar cases with less time:

- Juwan Grant – Sentenced to 4 years
- Jeffery Duncan – Sentenced to 4 ½ years
- Russell Wing – Sentenced to 8 years
- Jose Fregoso – Sentenced to 18 years
- Ross Knoles – Sentenced to 20-30 years
- Jess McConnell – Sentenced to 25-35 years
- Spencer White – Sentenced to 26-36 years
- Victor Acosta Bautista – Sentenced 53-56 years

## ARGUMENT 6: REHABILITATION

Mr. Avery has completed all the classes that has been able to. Since October 22, 2023 some of the classes Mr. Avery has completed are:

- Mr. Avery has completed over 230 learning hours
- Mr. Avery has completed 84 course hours
- Mr. Avery has completed 147 supplemental learning hours
- Mr. Avery has completed 43 courses
- Scientific Thinking and Communications
- Unlock Code Camp
- Computer Basics
- Research and Develop a Topic
- Math – Geometry 1
- Career Exploration: Information Technology
- Computer Skills and Literacy
- Math – Geometry II
- Introduction to Carpentry
- MRT (Moral Recognition Therapy)
- Introduction to Electrical Studies

Mr. Avery has been at NDCS for 5 years now and received his first misconduct report this past April. He had too many tokens for the vending machine. The limit is 25 and he had 38, he received a verbal warning.

In US v. Nunez, Chief Sanchez looked at the defendant's programming, continuing education and disciplinary issues and found a Petitioner with a Criminal History who demonstrated significant rehabilitative efforts.

In US v. Redrick, the judge found a sentence reduction to be "greatly favored" because of the defendant's rehabilitative efforts, programming, and continuing education in spite of the serious crimes and history of the Petitioner.

The amendment further clarifies that while rehabilitation is not, by itself, an extraordinary and compelling reason, it may be considered in combination with other circumstances.


## ARGUMENT 7: MR. AVERY'S HOME PLAN

Mr. Avery has an excellent home plan. Mr. Avery has many places that he can live once he is released, he can live with his mother, Lori or dad, Bob in Omaha, NE. He could also live with his sister, Erin in Omaha, his brother Brian in Chicago, or his other brother Adam in Portland, OR. We would be more than welcome with any member of his family.

Mr. Avery is still in contact and communication with his previous boss and he is ready and willing to resume his employment and become a productive member of society. He has the ability to rent a place if needed when he is released. He will abide by all of the court ordered stipulations that the court imposed. He will have the full support of his family.

## CONCLUSION

If released, Mr. Avery understands that he would most likely still be under significant supervision—this is, effectively, still a prison sentence. Moreover, the court has the authority to "impose a term of probation or supervised release with or without conditions that do not exceed the unserved portion of the original term of imprisonment." Thus, to the extent the court deems it just and proper, the court could order that he be released, but placed on home incarceration as a condition of supervised release until his current release date. It is hard not to imagine how home incarceration should the court adopt the same, not remain "symbolic" while also accomplishing the other

13

original purposes of the court's sentence. This is particularly true when one considers what home incarceration actually is:

See....https://www.uscourts.gov/services-forms/location-monitoring-probation-supervised-release-conditions

> c. Home Incarceration: Home Incarceration requires 24-hours-a-day lock-down except for medical necessities and court appearances or other activities specifically approved by the court.

Ultimately, the court can devise any post-release conditions it sees fit to address any lingering concerns it may have. For instance, in U.S. v. Gray, the court ordered the release of a 64-year-old inmate, and it noted that post-release supervision "will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. Gray's conduct. Further incarceration is not needed to deter Mr. Gray from further offenses." U.S. v. Gray, 2019 U.S. Dist. LEXIS 160593 at *12-13 (S.D. Ind. September 20, 2019).

> Mr. Avery prays that this Honorable Court will see that he deserves a second chance at living his life. Mr. Avery and his family pray that the Honorable Court grants him a sentence reduction. A reduction in sentence would give Mr. Avery some hope in life after this incident that has changed his life forever. Mr. Avery does realize that willful non-compliance or a violation of any of the set conditions may result in modification of the sentence or revocation by the court.

Respectfully submitted this 25th day of June 2024.

NICHOLAS AVERY
#211347
Tecumseh State Correctional Institute
PO Box 900
Tecumseh, NE 68450

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Nicholas Avery

## DEFENDANTS

Warden - TECUMSEH STATE CI

**(b)** County of Residence of First Listed Plaintiff   Johnson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Johnson
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

None

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☒ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 2254
Brief description of cause:
Writ of Habeas Corpus

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE   N/A

DOCKET NUMBER

DATE   8/19/24

SIGNATURE OF ATTORNEY OF RECORD   /s/Nicholas Avery   *Nicholas Avery*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



PRESS FIRMLY

**UNITED STATES POSTAL SERVICE** ® | **PRIORITY MAIL**

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international d
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of cove

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

RECEIVED
AUG [ ] 2024
CLERK
U.S. DISTRICT COURT

To schedule free Pa
scan the QR

USPS.COM/

**TRACKED ■ INSURED**

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER
POUCH

---

**UNITED STATES POSTAL SERVICE** ®    **Click-N-Ship**®

**P**    usps.com
$8.18
US POSTAGE
Insured

9405 8301 0935 5124 8482 89 0081 8001 0006 8102

**U.S. POSTAGE PAID**

08/19/2024    Mailed from 36024    90066220338431O

**PRIORITY MAIL**®

TECUMSEH STATE CI
NICHOLAS AVERY
PO BOX 900
TECUMSEH NE 68450-0900

08/20/2024
Flat Rate Envelope
RDC 03

C016

CLERK OF THE COURT
ROMAN L. HRUSKA FEDERAL COURTHOUSE
STE 1152
111 S 18TH PLZ
OMAHA NE 68102-1322

**USPS TRACKING #**

9405 8301 0935 5124 8482 89

This package is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuse may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service, October 2023, All rights reserved.